## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNEY G. PREWITT, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WALGREENS COMPANY, | : | No. 11-02393 |
| Defendant. | : | |

## M E M O R A N D U M

STENGEL, J.                                    September 25, 2012

This is an employment discrimination case brought by Plaintiff, Mr. Prewitt, against Defendant, Walgreens. Originally, the case concerned an age discrimination (Count I) and wrongful discharge claim (Count II) filed by Mr. Prewitt against Walgreens. The motion to amend the complaint would add a number of claims. For the reasons stated below, I will grant in part and deny in part Plaintiff's Motion to Amend.

### I.     Facts[1]

Plaintiff was employed at Walgreens beginning August 21, 2006, as a full-time pharmacist working in the Oxford, PA store on either the day shift or evening shift. Compl. at ¶ 1. During the summer of 2010, Walgreens disseminated an Immunizer Policy that, *inter alia*, required all Walgreens' pharmacists to become certified immunizers by September 1, 2010.[2] Compl. at ¶ 19. Based on Plaintiff's understanding of the Pennsylvania Conscience Policy adhered to by pharmacists, which states that

---

[1] For the purpose of this discussion, I will reference the Plaintiff's facts set forth in the proposed amended complaint as they are relevant to the futility analysis below.

[2] The Immunizer Policy states that Walgreens would attempt "to provide reasonable accommodations [for] any pharmacist who provides medical certification of a condition that prevents him or her from performing immunization duties." Compl. at ¶ 20.

where a pharmacist raises a conscience objection to the administration of a prescription, "the owner and pharmacist-manager should devise reasonable accommodations that will respect the pharmacist's choice while assuring delivery of services to patients in need," Plaintiff made Walgreens aware that he did not want to administer flu vaccinations to Walgreens customers.  Compl. at ¶¶ 12, 27.

Plaintiff advised Walgreens' management that he was opposed to administering flu vaccination shots under the Hipps' prescription because he had a very close friend who died from Guillain-Barre Syndrome ("GBS") from a flu vaccine.  Compl. at ¶ 27.  In previous years, Walgreens permitted Plaintiff to avoid administering the vaccine.  Compl. at ¶ 38.  Plaintiff agreed to obtain his certification in order to comply with the Immunizer Policy, but objected to administering the shot. Compl. at ¶ 33.  In August 2010, Plaintiff was given a ten (10) hour overnight shift position in the York store for the month of September 2010.  Compl. at ¶ 37.  Plaintiff refused this offer as this schedule was a significant departure from Plaintiff's previous working hours, income, and commute. Compl. at ¶¶ 39, 41.[3]  Plaintiff was placed into a non-paying floater position effective September 4, 2010.  Compl. at ¶¶ 39, 45.

Although Plaintiff did not work and was not paid since that time, he continued to communicate with Walgreens about making accommodations.  Compl. at ¶¶ 46, 47.  In October 2010, he provided to Walgreens a note from his physician dated August 26, 2010, stating that plaintiff suffered from a cardiac disease and administering immunizations would "create undue stress and cause significant illness," and working an

---

[3] Plaintiff offered to work exclusively on the second shift during the 2010-11 flu immunization season to reduce the likelihood of having to turn away patients seeking flu vaccination shots.  Compl. at ¶ 42.

overnight shift in a remote location "would be deleterious to his health and well-being." Compl. at ¶ 48.  Plaintiff then notified Walgreens that he believed he was being treated discriminatorily due to his age and/or ethical, moral, and/or religious beliefs.  Compl. at ¶ 49.  Finally, on December 18, 2010, Plaintiff filed a Charge of Discrimination with EEOC and PHRC based on age discrimination.  Compl. at ¶ 50.

In December 2010, unbeknownst to plaintiff, his medical and other benefits were terminated.  Compl. at ¶¶ 51-52.  Plaintiff remained under the impression, from his communications with Walgreens' corporate counsel, that he would return to his prior position "once the immunization season ended."  Compl. at ¶ 53.  However, Plaintiff was not returned to his position and was permanently replaced by a pharmacist more than 5 years younger.  Compl. at ¶¶ 54-56.  During this time, Plaintiff alleges that Walgreens hired and/or transferred non-immunizing pharmacists into its Pennsylvania stores and permitted them to work despite their lack of immunization licensure.  Compl. at ¶ 59. Many of these new pharmacists are significantly younger that Plaintiff, and none of them sought accommodation based on the ADA or for moral, ethical or religious reasons. Compl. at ¶ 60.  However, Plaintiff alleges that Walgreens did accommodate the new pharmacists' non-immunizing status by notifying customers of hours when an immunizing pharmacist would be available or sending customers to other locations. Compl. at ¶ 61.

Plaintiff alleges in his proposed amended complaint that Plaintiff's supervisor, Mr. Anderson, and Walgreens discriminated against him because of his "age and/or disability and/or religious beliefs … and/or his conscience objection" and engaged in a "retaliatory

act in retribution for his raising of discrimination claims both directly with Walgreens and also via filing a Charge of Discrimination with EEOC."  Compl. at ¶ 67.

Plaintiff's motion and accompanying memorandum request leave to amend the complaint to include additional claims.  Specifically, the Plaintiff seeks to add claims for religious and disability discrimination under Title VII (proposed new Count III); a claim for wrongful discharge arising out of his conscience objection on the grounds that it was protected under Pennsylvania's Constitution (new Count II); claims for age, religious and disability discrimination under the Pennsylvania Human Relations Act ("PHRA")(new Count IV); and a claim for retaliatory discharge under ADEA, Title VII and PHRA (new Count V).

Plaintiff makes the argument that he could not include his PHRA claims in the original complaint because § 962(c) of the PHRA requires a complainant to wait one year from the filing of his administrative charge to seek relief in court.  Additionally, Plaintiff states that the parties agreed that the discovery in the case be "phased."  This alleged divided approach left Plaintiff under the impression that the parties were proceeding with discovery and dispositive motions only on Count II and, therefore, there was no bad faith or undue delay on Plaintiff's part in seeking to amend at this time.  (Doc. No. 29 at 3-9).  Defendant's opposition to the Plaintiff's motion rests on grounds of undue delay, bad faith, prejudice, and futility.  I will discuss each of the defendant's objections below.

## II.    Standard

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend the party's pleading once as a matter of course. . . . Otherwise, a party may amend the party's

pleading only by leave of court . . . and leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a).  "While this Rule also states that leave to amend should be 'freely given,' a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 116 (3d Cir. 2003) (citing Foman v. Davis, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). Denial of leave to amend is disfavored; and a district judge should grant leave absent a substantial reason to deny.  Moore's Federal Practice, 3 ed., vol. 3, 15.14(1); see also Shane v. Fauver, 213 F.3d 113, 115-117 (3d Cir. 2000).  Thus, an amendment must be permitted unless it would be inequitable or futile.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 109 (3d Cir. 2002).

 A.  Prejudice

  "Mere delay alone is not enough to deny leave to amend, but 'at some point, the delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party.'"  McKenna v. City of Phila., 511 F. Supp. 2d 518, 527 (E.D. Pa. 2007) (Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006).  In deciding whether to grant leave to amend, "prejudice to the non-moving party is the touchstone for the denial of the amendment."  Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) (quoting Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)).

Prejudice has been defined as "undue difficulty in prosecuting a lawsuit as a result of a change of tactics or theories on the part of the other party." <u>Hesling v. Avon Grove Sch. Dist.</u>, 428 F. Supp. 2d 262, 278 (E D. Pa. 2006) (<u>Deakyne v. Comm'rs of Lewes</u>, 416 F.2d 290, 300 (3d Cir. 1696)).  To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction. <u>See Long v. Wilson</u>, 393 F.3d 390, 400 (3d Cir. Pa. 2004).  To successfully oppose a plaintiff's motion, the defendant must "demonstrate that [their] ability to present [their] case would be seriously impaired were amendment allowed."[4] <u>Dole v. Arco Chem. Co.</u>, 921 F.2d 484, 488 (3d Cir. 1990).

B. <u>Bad Faith or Undue Delay</u>

The denial of a motion to amend a complaint based on the movant's undue delay must be based on more than the mere passage of time.  "However, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." <u>Cureton v. NCAA</u>, 252 F.3d 267, 273 (3d Cir. 2001).  While bearing in mind the liberal pleading philosophy of the federal rules, "[t]he question of undue delay, as well as the question of bad faith, requires that we focus on the plaintiffs' motives for not amending their complaint to

---

[4] The burden is on the nonmoving party to establish prejudice and the burden is high.  <u>Dole</u>, 921 F.2d at 488.  The nonmoving party has a heavier burden than merely claiming prejudice, it must show that an unfair disadvantage or deprivation will result by allowing the amendment. <u>Heyl & Patterson Int'l, Inc. v. F. D. Rich Hous., Inc.</u>, 663 F.2d 419, 426 (3d Cir. 1981).

assert this claim earlier . . . ." Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984).

However, "[t]he liberality of Rule 15(a) counsels in favor of amendment even when a

party has been less than perfect in the preparation and presentation of a case.  It allows

for misunderstandings and good-faith lapses in judgment, so long as the party thereafter

acts reasonably and diligently." Arthur v. Maersk, Inc., 434 F.3d 196, 206 (3d Cir.

2006).

   C.  <u>Futility</u>

     "Futility means that the complaint, as amended, would fail to state a claim upon

which relief could be granted. In assessing 'futility,' the District Court applies the same

standard of legal sufficiency as applies under Rule 12(b)(6)." Shane v. Fauver, 213 F.3d

113, 115 (3d Cir. 2000) (citations omitted).  Under this standard, a court must take all the

well pleaded allegations as true, construe the complaint in the light most favorable to the

plaintiff, and determine whether, under any reasonable reading of the complaint, the

plaintiff may be entitled to relief.  See Vallies v. Sky Bank, 432 F.3d 493, 494 (3d Cir.

2006) (citing Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988)).

**III.   Discussion**

     Decisions regarding motions to amend pleadings rest in the sound discretion of the

District Court and will not be disturbed absent an abuse of that discretion.  See e.g.,

Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008); Cureton v. NCAA, 252

F.3d 267 (3d Cir. 2001).  That discretion, however, is governed by certain basic

principles that are embodied in Rule 15 of the Federal Rules of Civil Procedure.[5]

Defendant argues that the passage of "considerable time" between the original Complaint

and the Motion For Leave to Amend to support its claim of undue delay and bad faith.

Further, Defendant contends that it will be prejudiced if leave to amend is granted

because it was days away from filing a summary judgment motion and it would delay and

complicate this suit.  For the reasons discussed below, I will grant Plaintiff's motion in

part and deny it in part.

   A. PHRA State Law Claim of Age Discrimination

       Plaintiff's delay in seeking leave to amend the complaint to add his age

discrimination claim under the Pennsylvania Human Relations Act ("PHRA") is

understandable in these circumstances.[6]  See Arthur, 434 F.3d at 204 (3d Cir. 2006)

---

[5] The relevant portion of Rule 15 states "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a).

[6] Prejudice, Undue Delay, and Bad Faith: The Defendants argue that an amendment adding any claims to the Complaint was in bad faith and with undue delay.  They argue that the Plaintiff waited a considerable number of months to add these claims, which could have been added before discovery was over and dispositive motions were imminent.

In this situation, the parties clearly misunderstood the nature of the "phased" discovery agreement.  This is crucial to the Court's determination as to the Plaintiff's reasons and motivation for seeking leave to amend at this time.  This will determine whether the motion was made in bad faith or with undue delay.  See Cureton v. NCAA, 252 F.3d 267, 273 (3d Cir. 2001) (stating that "the question of undue delay requires that we focus on the movant's reasons for not amending sooner" and the issue of prejudice focuses on hardship to the nonmovant if the amendment is permitted);  See also J.E. Mamiye & Sons, Inc. v. Fidelity Bank, 813 F.2d 610, 614 (3d Cir. 1987) ("[T]he question . . . of bad faith requires that we focus on the plaintiff's motives for not amending their complaint earlier").

Considering the law regarding bad faith and undue delay, the Plaintiff's motivations are clear.  Further, if the Plaintiff's version of the agreement is correct, discovery would have only ended with respect to Count II in the original complaint. Therefore, focusing on Plaintiff's motives, I do not find evidence of bad faith or undue delay in adding the additional federal claims.  Although Defendant alleges that it had briefed its summary judgment motion, but no motions were filed with this court.  The Court concludes that this delay alone is not so extensive as to cause prejudice.  American Tel. & Tel. Co. v. Marstan Indus., 1994 U.S. Dist. LEXIS 8294, 1994 WL 276269, at *3 (E.D. Pa. June 21, 1994) (holding that the delay of nine months from the filing of the original complaint to the filing of the motion for leave to amend is not prejudicial).

(stating that "only one appellate court uncovered in our research has approved of denial of leave to amend based on a delay of less than one year" and that "a period of eleven months from commencement of an action to the filing of a motion for leave to amend is not, on its face, so excessive as to be presumptively unreasonable").  Plaintiff could not file his PHRA claim with his original complaint because the PHRC maintains exclusive jurisdiction over an employment discrimination claim until the expiration of one year or until the PHRC closes its case, whichever occurs sooner.  See 43 PA. CONS. STAT. § 962; Burgh v. Borough Council of Montrose, 251 F.3d 465, 471 (3d Cir. 2001); McGovern v. Jack D's, Inc., No. 03-5547, 2004 U.S. Dist. LEXIS 1985, at *26-27 (E.D. Pa. Feb. 3, 2004); Padgett v. The YMCA of Philadelphia, No. 97-6172, 1998 U.S. Dist. LEXIS 18693, at *15-18 (E.D. Pa. Nov. 25, 1998).

Here, the PHRC closed the Plaintiff's case on or around January 5, 2011 and Plaintiff filed for leave to amend four days later.  Moreover, Walgreens has not been prejudiced by this delay because the PHRA age discrimination claim mirrors the Federal Law claims and there is significant factual overlap.  As the Third Circuit has held: "[T]he

---

Defendant argues the amendment would prejudice it because it would require significant additional discovery, re-briefing of dispositive motions, and require substantial reworking of draft briefs.  Additionally, Defendant contends it would be prejudiced if I grant plaintiff leave to file the proposed amended complaint because Defendant would have to expend time and financial resources repeatedly defending frivolous claims.  "This is not what is meant by prejudice in this context,"  Young v. St. Luke's Hosp., 2010 U.S. Dist. LEXIS 30911 (E.D. Pa. Mar. 30, 2010), because "any amendment to a defective complaint would be barred because the Defendant would be forced to spend time and money defending the action."  Id.

Additionally, the evidence required to meet the new allegations for age and retaliation under the ADEA in the proposed Amended Complaint is similar to the evidence required to meet the pervious allegations in the original Complaint.  See Dole, 921 F.2d at 488.  No prejudice will be found where the amendment does not result in new facts requiring extensive additional discovery.  Adams, 739 F.2d at 869.  Although additional discovery is in order, Plaintiff was under the impression that discovery was to continue as to Count I of the original complaint.  The "liberality of Rule 15(a) counsels in favor of amendment even when a party has been less than perfect in the preparation and presentation of a case.  It allows for misunderstandings and good-faith lapses in judgment…."  Arthur v. Maersk, Inc., 434 F.3d 196, 206 (3d Cir. 2006).

PHRA is to be interpreted as identical to the federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." Slagle v. County of Clarion, 435 F.3d 262, 265 n.5 (3d Cir. 2006) (citing Fasold v. Justice, 409 F.3d 178, 184 n.8 (3d Cir. 2005)).  Therefore, Plaintiff's motion to amend his complaint to add the state law claim of age discrimination is granted.

    B.  Federal and State Law Claims For Retaliation, Religious Discrimination, and Disability Discrimination

       Plaintiff seeks to add a retaliation claim and religious and disability discrimination claims under state law.  A charge of discrimination timely filed with the EEOC may be enlarged to include other alleged discrimination that is reasonably related to the discrimination set forth in the original timely EEOC charge.  Money v. Provident Mut. Life Co., No. Civ. A. 04-846, 2004 U.S. Dist. LEXIS 10530, 2004 WL 1243739, *2 (E.D. Pa. June 3, 2004) (citing EEOC v. St. Michael Hosp. of Franciscan Sisters, 6 F. Supp. 2d 809 (E.D. Wis. 1998)).  The EEOC regulations provide some assistance with this interpretation:

> A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein.  Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.  A charge that has been so amended shall not be required to be redeferred.

29 C.F.R. § 1601.12(b).  Thus, if the alleged discrimination in the amended charge is within the same subject matter as the original EEOC charge, then the discrimination in the amended charge will be deemed to be reasonably related to and grow out of the

original EEOC charge and, therefore, timely filed.  Money, 2004 U.S. Dist. LEXIS 10530, 2004 WL 1243739, at * 2 (citing St. Michael Hosp., 6 F. Supp. 2d at 817).  The "parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . ."  Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976), cert. denied, 429 U.S. 1041 (1977).  Moreover, there need not have been an actual EEOC investigation, and "an action may be pursued for claims which would have been within the scope of a reasonable EEOC investigation if it had occurred."  Kresefky v. Panasonic Commc'ns & Sys. Co., 169 F.R.D. 54, 61 (D.N.J. 1996).

Plaintiff filed a charge with the EEOC based on age discrimination claims in this case.  He now proposes to add claims reasonably related to that claim.[7]  Plaintiff argues that the religious and disability discrimination claims are reasonably related to the Charge "insofar as they would have been uncovered in the course of even a rudimentary investigation by EEOC."  Plaintiff supports this argument with language from the EEOC Charge which stated he was the victim of age discrimination, but also that he believed he was perhaps being unlawfully discriminated against based upon "other unlawful factors as well."  (EEOC Charge; Exhibit B)

Defendant argues that the complaint alleges that the discrimination against Plaintiff ended on January 31, 2011 (Doc 1 at ¶ 44), giving Plaintiff 342 days with

---

[7] Plaintiff seeks to add claims of religious and disability discrimination as well as retaliation.  With regard to the retaliation claim, Plaintiff alleges that the claim results from post-Charge conduct that is reasonably related to the Charge. (Doc. No. 29 at 13).  This post-Charge conduct is in the form of letters exchanged by Walgreens counsel and Plaintiff's counsel offering to reinstate Plaintiff.  (Id. at 14).

knowledge of these new alleged theories of discrimination before Plaintiff's motion to amend the complaint was filed on January 9, 2012.  Defendant states that Plaintiff does not explain the reasons for delay and halts any progress made throughout discovery. Additionally, Defendant argues that is it severely prejudiced by the delay because Plaintiff asserts entirely new causes of action for religious and disability discrimination, each based on two different statutes.

    i.    <u>ADEA and PHRA Age-Based Retaliation Claims</u>

In <u>Howze v. Jones & Laughlin Steel Corp.</u>, 750 F.2d 1208 (3d Cir. 1984), the Third Circuit held that the plaintiff could amend her complaint to include a retaliation claim.  <u>Id.</u> at 1212.  Her initial EEOC charge alleged only race discrimination based on her employer's failure to promote her to a position for which she was qualified.  <u>Id.</u> at 1210.  Because a reasonable investigation by the EEOC would have encompassed a retaliation charge, the court allowed the plaintiff leave to amend.  <u>Id.</u> at 1212.  The discrimination and retaliation claims were alternative allegations regarding the employer's failure to promote the plaintiff, and the facts supporting the former allegation were the same as those supporting the latter.  <u>Id.</u>

Similar to <u>Howze</u>, Plaintiff's retaliation claim is reasonably related to his claim of age discrimination.  Plaintiff's EEOC charge focused upon Walgreens denial of Plaintiff's request not to immunize, which resulted in Plaintiff being put on suspension. <u>See</u> Plaintiff's Ex. B. (copy of EEOC/PHRC charge).  Although the charge does not address his ultimate termination from Walgreens, I find that this claim falls within "the scope of the EEOC investigation which can reasonably be expected to grow out of the

charge of discrimination."  <u>Bernstein v. National Liberty International Corp.</u>, 407 F.

Supp. 709, 713 (E.D. Pa. 1976) (Claims of retaliation for filing the charge are within the

category of reasonably related or growing out of).  Investigation of the denial of

Plaintiff's request not to immunize could reasonably be expected to lead to an

investigation of Plaintiff's employment status at Walgreens.[8]  Such an investigation

would have revealed information about his ultimate termination, which occurred after he

filed the Charge with the EEOC.[9]  Therefore, I will allow Plaintiff to amend his

complaint with regard to the retaliation claim as it relates to Plaintiff's claim of age

discrimination under the PHRA and the ADEA.

    ii.    <u>Federal and State Disability and Religious Discrimination Claims</u>

---

[8] The elements of a retaliation claim include: (1) conduct protected by Title VII taken by the plaintiff; (2) adverse employment action against the plaintiff by the employer; and (3) a causal link between the protected conduct and the employer's adverse action.  <u>Charlton v. Paramus Bd. of Educ.</u>, 25 F.3d 194, 200 (3d Cir. 1994).  "An acceptable form of protected activity under Title VII are [sic] informal protests of discriminatory employment practices, including making complaints to management."  <u>Hartman v. Sterling, Inc.</u>, No. CIV.A.01-2630, 2003 U.S. Dist. LEXIS 18140, 2003 WL 22358548, at *8 (E.D. Pa. Sept. 10, 2003).  Where the facts underlying the properly alleged discrimination claims are closely connected to the facts underlying the retaliation claims, courts have deemed the retaliation claims fairly within the scope of an EEOC investigation, notwithstanding the failure to enumerate the basis for such a claim.  <u>See, e.g.</u>, <u>Demshick v. Delaware Valley Convalescent Homes, Inc.</u>, No. CIV.A.05-2251, 2007 U.S. Dist. LEXIS 31064, 2007 WL 1244440, at *12 (E.D. Pa. Apr. 26, 2007) (allowing a retaliation claim to withstand  summary judgment despite the plaintiff having checked only "disability" and not "retaliation" as the cause for discrimination on her EEOC charge form, because "a plain reading" of the plaintiff's narrative revealed a claim for retaliation as well); <u>Jackson v. J. Lewis Crozer Library</u>, No. CIV.A.07-481, 2007 U.S. Dist. LEXIS 61582, 2007 WL 2407102, at *4 (E.D. Pa. Aug. 22, 2007) (holding that while the complaint does not use the word "retaliation," the actions alleged by plaintiff were within the scope of a claim for retaliation and would have been within the scope of any investigation conducted by the PHRC as a result of the PHRC complaint).

[9] Defendant argues prejudice and undue delay should prevent the Plaintiff from filing this additional claim. However, due to the misunderstanding regarding the bifurcation of discovery, <u>see</u> <u>supra</u> fn. 3, I find there is no undue delay or bad faith on the part of Plaintiff.  Additionally, I find that Plaintiff has sufficiently pled a plausible claim for retaliation.  Plaintiff's proposed amended complaint goes beyond mere legal conclusions and includes facts sufficient to put defendants on notice of the claims against them.  A complaint with enough factual matter may still proceed, even  if "actual proof of [the] facts is improbable and that a recovery is very remote and unlikely," <u>Twombly</u>, 550 U.S. at 556 (citation omitted).  Plaintiff's proposed amended complaint includes facts that have "nudged his claim[] across the line from conceivable to plausible."  <u>Id.</u> at 570.  Thus, the proposed amended complaint survives the futility analysis under Fed. R. Civ. P. 12(b)(6).

Examining the substance of the factual allegations in the original and proposed amended complaint as well as the Charge, it is clear that the claim of disability and religious discrimination, as well as the retaliation claims related thereto, alleged in the proposed amended complaint do not arise out of the same facts as the alleged age discrimination. [10]  Under the procedural scheme specified in Title VII, an Equal Employment Opportunity Commission ("EEOC") Charge is a prerequisite to a civil action under Title VII.  42 U.S.C. § 2000e-5(f)(1).  Therefore, Plaintiff must direct his claims to the EEOC before bringing them to this court.  See also Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976), cert. denied, 429 U.S. 1041 (1977) (in Title VII actions, "the aggrieved person is not permitted to bypass the administrative process").  Similarly, Pennsylvania law requires that a plaintiff exhaust his administrative remedies under the Pennsylvania Human Relations Act ("PHRA") before maintaining a civil suit under that Act.  43 Pa. C.S.A. § 962(c); Clay v. Advanced Computer Applications, 522 Pa. 86, 559 A.2d 917, 919 (Pa. 1989).

Neither Plaintiff's EEOC charge nor his PHRC filing mentions anything about religion or disability.  Plaintiff contends that these allegations of religion and disability discrimination are related to his claim regarding his age discrimination claim because he used language to suggest there may be other discriminatory reasons Walgreens placed him on suspended status.  Additionally, Plaintiff claims that a rudimentary investigation

---

[10] "In an employment discrimination case, a court may consider administrative documents, such as a plaintiff's charge filed with the Equal Employment Opportunity Commission (EEOC), without converting the motion to dismiss to a motion for summary judgment."  Carl v. W.-S. Life Ins. Co., No. CIV.A.09-3990, 2010 U.S. Dist. LEXIS 105891, 2010 WL 3860432, at *2 n.2 (E.D. Pa. Sept. 30, 2010).

would have revealed the religious nature of the discrimination and Plaintiff's disability. This is incorrect.  See e.g., Barzanty v. Verizon Pa., Inc., 361 Fed. Appx. 411, 412-13 (3d Cir. 2010) (holding  that the hostile work environment claim was not within the scope of the EEOC charge since the plaintiff raised only a gender discrimination claim to the EEOC); Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. Pa. 1996) (holding that the specifics of plaintiff's disability discrimination charge do not fairly encompass a claim for gender discrimination merely because investigation would reveal that Plaintiff is a man and the two employees who received the positions were women); Williams v. East Orange Cmty. Charter Sch., 396 Fed. Appx. 895, 897 (3d Cir. 2010) (finding that Plaintiff did not bring an ADA claim to the attention of the EEOC, and such a claim did not fall within the scope of her charge to the EEOC alleging that the defendants discriminated against her on the basis of  race, religion, and age); Mullen v. Topper's Salon & Healthcare Spa, Inc., 99 F. Supp. 2d 553, 555-56 (E.D. Pa. 2000) (holding that the plaintiff failed to exhaust her administrative remedies with respect to her sex discrimination claim because it was not within the scope of the plaintiff's EEOC charge, which alleged solely religious discrimination).[11]

---

[11] Another recent example by a fellow District Court came to a similar conclusion.  In Sencherey v. Stout Rd. Assocs., Inc., No. CIV.A.09-2856, 2011 U.S. Dist. LEXIS 14179, 2011 WL 499981 (E.D. Pa. Feb. 11, 2011), the plaintiff had filed a charge of discrimination with the EEOC, which included a sole count of gender discrimination, with no reference to her race or national origin.  2011 U.S. Dist. LEXIS 14179, at *3.  In the charge, she stated that she was discharged by the defendant while on maternity leave, despite having provided documentation that she was still under medical care.  Id.  She made no reference to discrimination on the basis of race or national origin and only placed an "x" in the box pertaining to gender discrimination.  Id.  Her subsequent complaint in federal court went on to set forth additional claims of race and national origin discrimination.  Id.  The court found that aside from failing to check the pertinent box, there was "no averment in the body of her [EEOC] Complaint . . . that would raise an inference of race and/or national origin discrimination."  2011 U.S. Dist. LEXIS 14179, at *6.  The court held that because "[p]laintiff did not aver that she was discriminated against as a black female individual nor as a West African female individual[,] . . . the EEOC could not reasonably be expected to have investigated Plaintiff's allegations of discrimination on the basis of race and national origin."  Id.

There is nothing in Plaintiff's administrative filings which would have inspired either the EEOC or the PHRC to inquire into the alleged disability from which Plaintiff suffers.[12]   Plaintiff checked only the age discrimination box on the charge.  The original charge addresses Plaintiff's objection to Walgreens' flu vaccination policy, noting his suspension from employment and his age.  There is no mention of his religion or any facts concerning his disability.  Further, I am not persuaded that language in the Charge that a person was possibly discriminated on the basis of "perhaps[,]…other factors as well" is sufficient to allow a Plaintiff to escape the necessary administrative requirements involved with filing these types of employment claims.[13]  If this were the case, Defendants would have to prepare for a myriad of claims that are unsupported under the circumstances, not to mention, any investigation by the EEOC would be entirely unguided and overbroad.

Additionally, there is case law contrasting Plaintiff's belief that by merely alleging in his Charge that the Defendant acted in a discriminatory manner means he has made out all facets of discrimination charges.  In Sandom v. Travelers Mortgage Services, Inc., 752 F. Supp. 1240 (D. N.J. 1990), for example, another district court in this circuit stated

---

[12] In Ferguson v. E. I. Du Pont de Nemours & Co., 560 F. Supp. 1172, 1189 (D. Del. 1983), the court stated that the concept of "scope" falls into three basic categories, which are articulated in A. Larson, Employment Discrimination § 49.83c at 9B-193.  These categories are subject matter, time, and class characterization.  Here the subject matter of the complaint concerns Plaintiff's suspension from Walgreens.  However, the class characterizations for Plaintiff's proposed claims are completely different.  While Plaintiff alleged age discrimination in the Charge, there is nothing concerning his religion or his disability.  Therefore, the respective class characteristics are completely different, thereby falling outside the scope of the EEOC investigation.

[13] It should be noted that merely checking off the box on the Charge form is insufficient to exhaust it as a claim. McCutchen v. Sunoco, Inc., No. CIV.A.01-2788, 2002 U.S. Dist. LEXIS 15426, 2002 WL 1896586, at *3 (E.D. Pa. Aug. 16, 2002).  Rather, a plaintiff that checks off a box for a particular type of discrimination on a Charge form, but then leaves the form bereft of any allusion to allegations of such discrimination cannot be deemed to have exhausted that claim.  Id.; see also Fleming v. Kramont Emplr. Royce Realty, Inc., 2002 U.S. Dist. LEXIS 15806, *7-8 (E.D. Pa. Aug. 16, 2002).  This is analogous to a plaintiff simply stating broadly in the form that "other discrimination" may be present as well, but including no factual allegations for support.

"because a claim of sexual harassment may constitute sexual discrimination does not imply that a charge consisting of facts which purportedly constitute sexual discrimination necessarily includes all forms of sexual discrimination." Id. at 1248.  Plaintiff's religious and disability claims in this action are similar the sexual harassment claims in Sandom; they are completely unrelated to the allegations in Plaintiff's administrative filings. Therefore, plaintiff has failed to satisfy a prerequisite to bringing his religious and disability claims into federal court.

Finally, Defendant cannot fairly be said to have been put on notice of any religious or disability claim.[14]  Even if the phased discovery was in place, this would not have prevented Plaintiff from filing his claims of religious and disability discrimination at the outset of the case.  Therefore, Plaintiff's request to amend to include Counts IV and V relating to the religious and disability claims is denied.[15]  As the EEOC investigation that

---

[14] Although Plaintiff argues that he wrote Walgreens a letter describing his conscience objection based upon moral, ethical, and/or religious beliefs, this is not sufficient to put the Defendant on notice of a claim that was neither included in the Charge or the Complaint.

[15] Because I am denying Plaintiff leave to amend his complaint to include claims of religion and disability discrimination, Plaintiff's request to include the Title VII retaliation claim will also be denied and the request to include the retaliation claim under the PHRA with respect to the disability and religious claims will be denied as well.

Additionally, because I am denying Plaintiff's motion to amend as to these claims, I do not find it necessary to provide an analysis concerning the factors of Prejudice, Undue Delay, Bad Faith, and Futility.  However, even if the Plaintiff's claims were reasonably related to the original charge, and, therefore, not barred by his failure to exhaust administrative remedies, the proposed counts would still fail.  Because of the issue of misunderstanding as to the bifurcated or "phased" nature of discovery, I will focus only on the factor of futility, which I find dispositive.  Even if construed liberally, the facts alleged in Plaintiff's complaint are not sufficient to support his additionally theories of discrimination.

Specifically, with regard to his claims of religious discrimination, Plaintiff fails to allege any religion or sincere religious beliefs in his proposed amended complaint.  "Title VII requires employers to make reasonable accommodations for their employees' religious beliefs and practices, unless doing so would result in 'undue hardship' to the employer.  To establish a prima facie case, the employee must show (1) he holds a sincere religious belief that conflicts with a job requirement; (2) he informed his employer of the conflict; and (3) he was disciplined for failing to comply with the conflicting requirement.  Dodd v. SEPTA, 2008 U.S. Dist. LEXIS 56301 (E.D. Pa. July 23, 2008) (citing Shelton v. University of Medicine & Dentistry of New Jersey, 223 F.3d 220, 224 (3d Cir.

2000)).  "Few tasks that confront a court require more circumspection than that of determining whether a particular set of ideas constitutes a religion." Africa v. Pennsylvania, 662 F.2d 1025, 1031 (3d Cir. 1981).  Nonetheless, "Title VII does require the EEOC or the courts to evaluate a plaintiff's claimed entitlement to accommodation of her religious principles." Protos v. Volkswagen of America, Inc., 797 F.2d 129, 136 (3d Cir. 1986).

In making this determination, it is important to consider what a constitutionally protected religious observance is, as compared to a desire or preference that is not subject to accommodation.  While the U.S. Supreme Court has counseled that "it is no business of courts to say ... what is a religious practice or activity," Fowler v. Rhode Island, 345 U.S. 67, 70, 73 S.Ct. 526, 527, 97 L.Ed. 828 (1953), it has also described a "religious" belief which is entitled to constitutional or statutory protection as "not merely a matter of personal preference, but one of deep religious conviction, shared by an organized group, and intimately related to daily living." Wisconsin v. Yoder, 406 U.S. 205, 215-16 (1972); see also Brown v. General Motors Corp., 601 F.2d 956, 960 (8th Cir. 1979) (Title VII "does not require an employer to reasonably accommodate the purely personal preferences of its employees."); Sidelinger v. Harbor Creek Sch. Dist., 2006 U.S. Dist. LEXIS 86703 (W.D. Pa. Nov. 27, 2006) (held that plaintiff failed to show he held a sincere religious belief against wearing an ID badge).

In this case, Plaintiff failed to plead his religion in the Charge.  Although he allegedly sent Defendant a letter explaining that administering flu vaccinations was against his religious, moral, or ethical beliefs, the proposed amended complaint clearly states Plaintiff advised Walgreens' management that he was opposed to administering flu vaccination shots under the Hipps' prescription because he had a very close friend who died from Guillain-Barre Syndrome ("GBS") from a flu vaccine.  Compl. at ¶ 27.  This is a personal preference and not a religious belief as intended by the statues.  Therefore, it is futile to amend Plaintiff's claim of religious discrimination as it fails to state a claim under 12(b)(6).

Further, Plaintiff's claim of disability discrimination also fails.  The Americans with Disabilities Act (ADA) prohibits discrimination against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.  42 U.S.C.S. § 12112(a).  Under the McDonnell Douglas burden shifting analysis, to establish a prima facie case of disability discrimination under the ADA, the plaintiff must show: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.

A "disability" for purposes of the ADA is a physical or mental impairment that effects a "substantial limitation" on one or more of the major life activities of such individual; a record of such impairment; or being regarded has having such impairment. See 42 U.S.C. § 12102(2).  "Substantial limitation" is itself assessed by reference to the plaintiff's ability to perform such activity in comparison to the average person in the general population; more specifically, it entails an assessment of the nature and severity of the impairment, its duration/expected duration, and its impacts. See 29 C.F.R. § 1630.2(j).

Allegations of cardiovascular disease are alone insufficient to establish disability. Snyder v. Norfolk Southern Ry., 463 F. Supp. 2d 528, 539 (E.D. Pa. 2006); Lennex v. Wal-Mart Stores E., LP, 2008 U.S. Dist. LEXIS 117687 (W.D. Pa. Feb. 29, 2008).  The factors a court should consider to determine if a person is substantially limited in a major life activity include: (1) the nature and severity of the impairment; (2) the duration or expected duration; and (3) the expected or actual permanent or long-term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).  "Major life activities" include "walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i); "It is insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of an impairment.  Instead, the ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.'" Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002); Anderson v. Radio One, Inc., 2010 U.S. Dist. LEXIS 99713 (E.D. Pa. Sept. 20, 2010).

In this case, Plaintiff informed Defendant that he could not administer vaccines because of increased stress levels.  The proposed amended complaint alleges that "in early October 2010 [Plaintiff] provided to Walgreens a note from his physician dated August 26, 2010 which noted plaintiff's cardiac disease and stated, inter alia, that administering

could reasonably be expected to grow out of Plaintiff's charge of discrimination did not encompass the basis for Plaintiff's religious or disability discrimination claims, Defendant bears no additional burden of showing any prejudice from the allowance of such claims.[16]

C. Plaintiff's Constitutional Argument (New Count II)

The Defendants argue that amendment would prejudice them because it would require significant additional discovery, re-briefing of dispositive motions, and require substantial reworking of draft briefs. Additionally, they argue that the Plaintiff waited a considerable number of months to add this claim, which could have been added before discovery was over and dispositive motions were imminent.

Prejudice has been defined as "undue difficulty in prosecuting a lawsuit as a result of a change of *tactics or theories* on the part of the other party." Hesling v. Avon Grove Sch. Dist., 428 F. Supp. 2d 262, 278 (E D. Pa. 2006) (Deakyne v. Comm'rs of Lewes, 416 F.2d 290, 300 (3d Cir. 1696)) (emphasis added). Additionally, to determine bad faith or undue delay, once again, the court must focus on the plaintiff's motives. Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984).

---

immunizations would 'create undue stress and cause significant illness,' and made clear that accommodating plaintiff by forcing him to work an overnight shift in a remote location 'would be deleterious to his health and well being.'" This is insufficient to show the Plaintiff was substantially limited in a major life activity. Plaintiff alleges that working a night shift increased his stress levels and he should not have to administer vaccine because it would be "deleterious to his health." The inability to administer vaccines or work the night shift does not substantially limit an individual from performing activities of central importance to most people's daily lives.

[16] Although, unable to be considered under a 12(b)(6) standard, I find it important to note that during Plaintiff's deposition, Walgreens briefly inquired into whether Plaintiff had a religious objection to administering flu shots, to which the Plaintiff responded he did not. (Doc. No. 33 at 12).

Even if the Plaintiff's version of the phased discovery agreement is correct, discovery would have ended with respect to Count II in the original complaint.[17] Therefore, Plaintiff's motives are different for proposed Count II.  Plaintiff even admits that the amendment adding the wrongful discharge claim based upon Pennsylvania's Constitution would have impacted "the anticipated … Motion for Summary Judgment." (Doc. No. 29 at 7).  Plaintiff seeks to bring an entirely new theory that will change the scope of the original Count II.

Considering whether this amendment would result in additional discovery, cost, and preparation, Cureton, 252 F.3d at 273, I find that it does.  This new theory, which could have been asserted in the original complaint; the proposed amendment, at this stage, would prejudice Defendants.  If the amendment were allowed, Defendants would be required to defend against (and take discovery relating to) an entirely new public policy argument, which differs considerably from the argument in the original Count II. The Court agrees with Defendant that this will have a substantial and prejudicial impact on Defendant's preparation and defense.  See, e.g., Stallings ex rel. Estate of Stallings v. IBM Corp., No. 08-3121, 2009 U.S. Dist. LEXIS 81963, 2009 WL 2905471, at *17 (D.N.J. Sept. 8, 2009) ("Prejudice may result from an amendment where a party has to change tactics or case theories because of new claims.").

---

[17] Count II asserted that Plaintiff was protected under law from wrongful termination after raising a conscientious objection to administering the flu immunization in accord with Pennsylvania's State Pharmacy Board.

**IV.     Conclusion**

Accordingly, the Court will allow Plaintiff to amend the Complaint to include the state law claim of age discrimination and the retaliation claims associated with the state and federal age discrimination claims alleged in the proposed amended complaint. However, as discussed above, granting leave to amend the remaining claims is denied.

An appropriate Order follows.